Devon W. Petersen, 6-4480
FLEENER PETERSEN, LLC
506 S. 8th St.
Laramie, WY 80524
Phone: (307) 460-4333
Fax: (866) 825-6038
devon@fleenerlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| LEO VAROS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cv-10 |
| | ) | |
| M. WEBSTER (FNU), in his | ) | |
| individual capacity; E. TARASKI | ) | |
| (FNU), in her individual capacity; | ) | |
| and the CITY OF CHEYENNE, | ) | |
| WYOMING, a municipality, | ) | |
| | ) | |
|     Defendants. | ) | |

_____

## PLAINTIFF'S COMPLAINT AND JURY DEMAND
_____

COMES NOW, Plaintiff, Leo Varos, by and through undersigned counsel, and hereby files this Complaint against the above-named Defendants and demands a trial by jury to decide his claims for relief. For his claims of relief against Defendants, Plaintiff alleges the following:

## I. INTRODUCTION

1

1) Plaintiff Leo Varos' claims against Defendants Cheyenne Police Department (hereinafter "CPD") Officers M. Webster (FNU) and E. Taraski (FNU) (hereinafter "Individual Officers") and Defendant City of Cheyenne arise under 42 U.S.C. § 1983.

2) Defendants Individual Officers violated Mr. Varos' Federal Constitutional rights when, as on-duty CPD officers acting under color of state law, they dislocated his elbow and dislocated the radius, cubital tunnel, and median ulnar nerves in his right wrist during a DUI stop.  These traumatic injuries have required multiple surgeries to Mr. Varos' elbow and wrist, as well as pain and suffering, medical and other expenses, missed employment opportunities and lost wages, fear, humiliation, embarrassment, mental anguish, and the loss of enjoyment of life.

3) Defendant City of Cheyenne's policies, customs, and practices, including failure to train, supervise, and discipline, were also moving forces behind the violations of the constitutional rights held by Mr. Varos. Over the last several years, the Cheyenne Police Department has repeatedly violated the constitutional rights of various citizens.

## II. PARTIES, JURISDICTION, AND VENUE

2

4) At all times relevant to this Complaint, Plaintiff Leo Varos was an individual residing in Cheyenne, Laramie County, Wyoming.

5) At all times relevant to this Complaint, Defendants Individual Officers were employees and officers of the Cheyenne Police Department, a local governmental law enforcement agency located in Laramie County, State of Wyoming, and District of Wyoming.  At the time of the incident, Defendants Individual Officers were on-duty for CPD and acting under color of state law. The Individual Officers are sued in their individual capacities.

6) City of Cheyenne is a local municipality under the laws of the State of Wyoming and is a subdivision of the State of Wyoming and the legal entity responsible for itself and for the Cheyenne Police Department.

7) All incidents occurred in Cheyenne, Laramie County, Wyoming.

8) This Court has personal jurisdiction over all Defendants, as they all worked or had their principal place of business in the District of Wyoming at the time of the incident and the incident took place in the District of Wyoming, thereby satisfying personal jurisdiction.

9) This Court has subject matter jurisdiction over the claim, as it presents a federal question under 42 U.S.C. § 1983.  Article III, § 2 of the United States Constitution provides that federal judicial power shall extend to all cases "arising under this Constitution, the Laws of the United States, and Treaties made, or which

3

shall be made, under their Authority." This constitutional provision authorizes Congress to give federal courts such jurisdiction. The congressional grant of federal question jurisdiction is codified at 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

10) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as "a substantial part of the events" on which this claim is based occurred in Cheyenne in the District of Wyoming, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

### III. FACTS

11) On January 8, 2023, Mr. Varos was stopped by Defendant CPD Officer M. Webster while driving a vehicle in Cheyenne for no headlights. When Mr. Varos lowered his window, Officer Webster smelled the odor of alcohol coming from within the vehicle. Ultimately, Officer Webster ordered Mr. Varos to exit the vehicle. Mr. Varos refused to exit the vehicle, and ultimately Officer Webster and Officer E. Taraski grabbed Mr. Varos by the wrist and forcefully removed Mr. Varos from the vehicle and took him to the ground. While on the ground, Officer Webster attempted to put Mr. Varos' right arm behind Mr. Varos' back. At that time, Mr. Varos told Officers Webster and Taraski that he had "a bad arm." Officers Webster and Taraski proceeded to use significant force to wrench Mr.

Varos' arm behind his back as Mr. Varos' yelled out in pain.  All of these events were captured by Officer Webster's bodyworn camera.

12) Mr. Varos is sixty-five years old with a reconstructed right shoulder with limited right arm mobility.  Because of the limited mobility in Mr. Varos' right shoulder, the only way Mr. Varos' hand could get behind his back was by Officers Webster and Taraski using significant force and significantly dislocating Mr. Varos' elbow joint, such that the lower half of Mr. Varos' arm was removed from the elbow joint.



13) The wrenching of Mr. Varos' right arm behind his back dislocated Mr. Varos' elbow and required multiple surgeries.  The first surgery was performed at 5:39 am on January 9, 2023, approximately ten hours after the elbow was dislocated.  The surgery was performed at Cheyenne Regional Medical Center by

Dr. Brett Winter, who noted a "significant dislocation" of the right elbow. Prior to the surgery, Mr. Varos suffered for several hours with the pain of the dislocated elbow, along with "massive swelling."

14) While Mr. Varos' elbow was reattached surgically, Dr. Winter noted that Mr. Varos will "likely need lateral collateral ligament and possible medial collateral ligament repair."

15) In fact, Mr. Varos did need a follow-up surgery. On June 3, 2024, Mr. Varos underwent a second surgery performed by Dr. Wyatt, who described the need for surgery as follows:

> He has significant electrodiagnostic findings consistent with compressive neuropathy of the median nerve at the wrist and the ulnar nerve at the wrist as well as the ulnar nerve at the elbow. Studies reveal significant compressive neuropathy of the ulnar nerve. Moreover, the median nerve has no sensory or motor electric sensitivity currently and his hand is completely numb. He is here today to have that taken care of. He also has a significant de Quervain's tenosynovitis and intersection syndrome. During the same circumstances that led him to have the compressive neuropathies, he had a dislocation of his radial head at the right elbow. He has a foreign body there that he would like me to look into during this operation as well.

16) Over the last two years, Mr. Varos has required physical therapy to help with the pain and numbness in his right elbow and wrist. Despite those efforts, Mr. Varos continues to suffer pain and numbness in his right arm from this incident.

17) As a result of this incident, Mr. Varos has sustained injuries, including past and future physical harm, past and future emotional and mental harm,

6

including fear, humiliation, and mental anguish, past and future costs of medical care, and lost wages.

18) The use of force against Mr. Varos was unlawful and grossly excessive in violation of the Fourth Amendment to the United States Constitution, and resulted from the deliberately indifferent customs, practices, training, supervision and/or discipline of the City of Cheyenne.

19) Defendant City of Cheyenne's policies, customs, and practices, including failure to train, supervise, and discipline, were moving forces behind the violations of the constitutional rights held by Mr. Varos.

20) Specifically, the City of Cheyenne's deliberately indifferent customs, practices, training, supervision and discipline have been the moving force behind the following violations of citizens' constitutional rights:

*Incident #1*) On June 3, 2017, CPD Officer Eric Norris assaulted David Harrison without legal justification, fracturing his rib. This assault is detailed in *Torres et al v. Norris et al*, United States District Court for the District of Wyoming, No. 2:21-cv-00152-NDF. CPD Officer Eric Norris bragged and laughed to his fellow officers about what he had done.

*Incident #2*) On August 25, 2017, CPD Officer Eric Norris assaulted Maurice Torres without legal justification by punching him in the face. This assault

is detailed in *Torres et al v. Norris et al*, United States District Court for the District of Wyoming, No. 2:21-cv-00152-NDF.

Incident #3) On August 25, 2017, Brian Kanzler was assaulted by CPD Officer C.K. Wood for filming on his cell phone the above-mentioned assault of Mr. Torres. This assault is detailed in *Torres et al v. Norris et al*, United States District Court for the District of Wyoming, No. 2:21-cv-00152-NDF

Incident #4) On August 5, 2018, CPD Officer Eric Norris punched Travis Salway in the face with a closed fist while Mr. Salway was restrained with his hands cuffed behind his back. This assault is detailed in *Salway v. Norris*, United States District Court for the District of Wyoming, No. 20-CV-115.

Incident #5) On August 8, 2018, without provocation or good cause, Officer Norris shoved Tavea Martinez, who was then approximately 5 months pregnant, into the side of his patrol car during her arrest. Officer Norris unnecessarily escalated the incident in order to use force and justify that use of force that would not have been necessary had he conducted himself in a reasonable manner.

Incident #6) On February 13, 2020, CPD Officers Young, Warren, and Miles, unlawfully entered Myron Woods' home and used physical force against him. See *Woods v. City of Cheyenne, et al*, United States District Court for the District of Wyoming, No. 2:23-CV-35-KHR.

8

*Incident #7*) On July 8, 2023, CPD Officer Muzquiz forcefully removed Joann Ockinga from her vehicle and threw her to the ground, breaking her ankle. See *Ockinga v. Muzquiz, et al*, United States District Court for the District of Wyoming, No. 2:24-CV-00240. During that incident, one CPD officer can be heard saying to another male CPD officer "She's doing better than the guy I arrested." The other male officer responds, laughing "Oh nice, I forgot about that." Also, during the incident with Ms. Ockinga, CPD Officer Kaitlin Peterson refers to a "Norris," who is apparently in a supervisory, administrative role within CPD. Based on information and belief, this "Norris" is the CPD Officer referred to above, who, rather than being disciplined or fired, has been promoted to a supervisory role within the CPD.

*Incident #8*) On August 11, 2023, CPD Officer Norris assaulted and tased Myron Woods without legal justification. See *Woods v. City of Cheyenne, et al*, United States District Court for the District of Wyoming, No. 2:24-cv-00174-KHR.

*Incident #9*) On November 5, 2024 two CPD Officers employed a front leg sweep maneuver on Brandon Moyte while his hands were handcuffed behind his back, destroying his knee and leg, severing his femoral artery, necessitating immediate life-saving surgery.

9

*Incident #10*) On November 24, 2024, CPD Officers assaulted Plaintiff Leo Varos again without legal justification.  Mr. Varos was a passenger in a vehicle and forcefully removed and assaulted despite not violating any law.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourth and Fourteenth Amendment Violation
### Excessive Force Used Against Leo Varos
### (Against Defendants Webster and Taraski in their Individual Capacities)

21) For this Claim of Relief, Plaintiff incorporates the facts stated herein, which provide the basis for the claim that Individual Defendants, while on-duty and acting under color of State law, statute, ordinance, regulation, custom, or usage of the State of Wyoming, deprived Leo Varos, Plaintiff and a citizen of the United States and person within the jurisdiction thereof, of Mr. Varos' rights, privileges, or immunities secured by the United States Constitution and federal laws, to wit:

22) Defendants Individual Officers, while on duty, deprived Mr. Varos of his Fourth Amendment right not to be subjected to excessive force.

23) This deprivation caused Mr. Varos injury and damages in an amount to be determined at trial.

24) 42 U.S.C. §1983 makes Defendants Individual Officers liable to Mr. Varos in an action at law, suit in equity, or other proper proceeding for redress for a violation of Mr. Varos' Fourth Amendment right to be free from excessive force.

PUNITIVE DAMAGES-

25) Defendants Individual Officers acted maliciously and wantonly, with malice, recklessness, and/or callous indifference, justifying, in addition to compensatory damages, punitive damages in this case.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth and Fourteenth Amendment Violation**
**Unconstitutional Policies, Customs, Practices and Inadequate Training and Supervision of Use of Excessive Force**
(*Monell* **Claim Against Defendant City of Cheyenne)**

26) For this Claim of Relief, Plaintiff incorporates the facts stated herein, which provide the basis for the claim that CPD's policies, customs, procedures, and practices, including inadequate training and supervision, resulted in harm to Mr. Varos.

27) Defendant City of Cheyenne's training program was inadequate to train its employees to carry out their duties. Defendant City of Cheyenne's failure to adequately train its police officers amounted to deliberate indifference to the fact that inaction would obviously result in the violation of the 4th Amendment right to be free from unreasonable seizures – including excessive force. Defendant City of

11

Cheyenne's failure to adequately train proximately caused the violation of Plaintiff's 4th Amendment right to be free from unreasonable seizures.  Defendant City of Cheyenne's inadequate training caused Mr. Varos' injuries, which were a foreseeable result of CPD's inadequate training.

28) 42 U.S.C. §1983 makes Defendant City of Cheyenne liable to Mr. Varos in an action at law, suit in equity, or other proper proceeding for redress for inadequately training its officers that caused a violation of Mr. Varos' Fourth Amendment right to be free from unreasonable seizures.

29) In light of all the foregoing, Defendant Webster used excessive force against Leo Varos and in accordance with custom, policy, or practice, including a failure to discipline, train, and supervise, promulgated or employed by Defendant City of Cheyenne.

30) In light of all the foregoing, Defendant Taraski used excessive force against Leo Varos and in accordance with custom, policy, or practice, including a failure to discipline, train, and supervise, promulgated or employed by Defendant City of Cheyenne.

31) Defendant City of Cheyenne established policies, customs and/or practices in violation of the Constitution.

32) Defendant City of Cheyenne developed and maintained law enforcement related policies, customs, and/or practices exhibiting or resulting in a deliberate

indifference to the Fourth and Fourteenth Amendment protected constitutional rights of persons in Cheyenne, which proximately caused the violation of each Plaintiff's constitutional rights.

33) Defendant City of Cheyenne failed to properly supervise and discipline its employees with regard to lawful seizures and lawful use of force.

34) In light of the duties and responsibilities of those law enforcement officers that participate in providing safety and security for citizens and arrestees, the need for supervision and discipline is so obvious, and the inadequacy of supervision and discipline is so likely to result in the violation of constitutional rights such as those described herein, that Defendant City of Cheyenne is liable for its failure to do so.

35) The inadequate supervision and discipline provided by Defendant City of Cheyenne resulted from a conscious or deliberate choice to follow a course of action from among various alternatives. Defendant City of Cheyenne could have and should have pursued reasonable methods for the supervising and disciplining of such employees yet failed to do so.

36) Defendant City of Cheyenne's policies, customs, or practices in failing to supervise and discipline its employees were the proximate cause of, and moving force behind, the violation of the Plaintiff's constitutional rights, which caused them damages.

13

37) As a direct result of the excessive force customs, policies and practices of the City of Cheyenne, Plaintiff Leo Varos suffered damages and injuries as specifically alleged elsewhere in this complaint including, as applicable, a dislocated elbow and injured wrist that required multiple surgeries, medical and other expenses, loss of income, pain, fear, anxiety, mental anguish, humiliation, embarrassment, and loss of enjoyment of life.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants, upon each of Plaintiff's claims and grant:

(a) Compensatory and consequential damages, including damages for physical injury, mental anguish, emotional distress, embarrassment, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(b) All economic losses on all claims allowed by law;

(c) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(d) Attorney's fees and the costs associated with this action, as well as expert witness fees, on all claims allowed by law, including 42 U.S.C. § 1988;

(e) Pre- and post-judgment interest at the lawful rate to the maximum extent allowed by law;

(f) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

DATED the 7th day of January 2025.

Devon Petersen
Wyoming State Bar #6-4480
Fleener Petersen, LLC
506 S. 8th St.
Laramie, WY 82070
(307) 460-4333
devon@fleenerlaw.com
ATTORNEY FOR PLAINTIFF